UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

HISCOX INSURANCE COMPANY INC.,

    Plaintiff,

v.

FLA UPKEEP PROPERTY MAINTENANCE,
LLC and DAVID TORRES,

    Defendants.
_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, HISCOX INSURANCE COMPANY INC. ("Hiscox") files this Complaint for Declaratory Judgment against FLA UPKEEP PROPERTY MAINTENANCE, LLC ("Fla Upkeep") and DAVID TORRES ("Torres") (collectively "Defendants"), and states as follows:

1. This is an action seeking declaratory and other relief pursuant to 28 U.S.C. §§ 2201 and 2202 for the purpose of determining a question of actual controversy between the parties.

2. This Court has jurisdiction under 28 U.S.C. §1332.

3. Hiscox seeks a declaration that it has no obligation to defend or indemnify Fla Upkeep against a claim made by Torres arising out of an incident that allegedly occurred on October 20, 2023 at or near a property located at 16421 Ontario Place, Davie, FL 3331 (the "Incident"). This includes any claim made by Torres in the action titled *David Torres v. Fla Upkeep, Miami Management and Estates of Stirling Lake Homeowners Association, Inc.,* Case No. 2023-025718-CA-01, filed in the Circuit Court in Miami-Dade County, Florida (the "Underlying Lawsuit"). The claim made by Torres against Fla Upkeep for damages related to the Incident are referred to herein as the "Underlying Claim."

1

**THE PARTIES**

4. Hiscox is incorporated under the laws of the State of Illinois and has its principal place of business in Illinois. It is an insurance company authorized to do business in the State of Florida and elsewhere. At all times material hereto, Hiscox is and was a citizen of Illinois.

5. According to the State of Florida's Department of Corporations, Fla Upkeep is a corporation registered in the State of Florida with its principal place of business in Miami-Dade County, Florida. Upon information and belief, the sole member of Fla Upkeep is James Barry, Jr., an individual who is domiciled in Miami-Dade County, Florida and is therefore a citizen of Florida.

6. Upon information and belief, Torres is an individual residing in Broward County, Florida, and is therefore a citizen of Florida.

7. In accordance with the foregoing and 28 U.S.C. § 1332, there is complete diversity between Plaintiff and Defendants.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. § 1332(a)(1), 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure

9. An actual justiciable controversy between Hiscox and Defendants exists within the meaning of 28 U.S.C. § 2201 regarding the parties' rights and obligations under the insurance policy at issue with respect to the Underlying Claim.

10. Upon information and belief, the Underlying Claim seeks monetary damages well in excess of $75,000; therefore, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim for declaratory relief occurred in the Southern District of Florida. The Incident allegedly occurred in Broward County, Florida, which is within this district. The Underlying Lawsuit is venued in Miami Dade County, Florida, which is within this district. The insurance policy at issue was delivered to Fla Upkeep in Miami-Dade County, Florida, which is within this district.

## FACTS

### The Underlying Claim

12. The operative complaint in the Underlying Lawsuit is an Amended Complaint filed by Torres on February 5, 2024 (the "Underlying Complaint"). **The Underlying Complaint is attached hereto at Exhibit A.**

13. Torres alleges that Fla Upkeep, Miami Management, Inc. ("Miami Management") and the Estates of Stirling Lake Homeowners Associations, Inc. (the "Association") "entered into a business agreement to perform and/or provide services" throughout the Estates of Stirling Lake. Ex. A at ¶ 7.

14. On October 20, 2023, Torres was installing fences at the Estates of Stirling Lake while Fla Upkeep "was removing tree stumps and/or providing landscaping services[.]" Ex. A at ¶ 6.

15. Fla Upkeep "had landscaping equipment that was being utilized to grind or cut tree stumps." Ex. A at ¶ 8.

16. "At all times material[,]" Fla Upkeep was "attempting to shave and/or trim and/or cut a tree that was in the line where fencing needed to be installed[.]" Ex. A at ¶ 9.

17. Fla Upkeep "failed to secure the subject tree grinding equipment and allowed it to remain in the 'on' position with the blades running . . . . [Torres'] right leg was struck by the

3

tree grinding equipment and began to suck his body into the blades." Torres allegedly suffered "catastrophic injuries." Ex. A at ¶¶ 10-12.

18. One count of negligence is asserted against Fla Upkeep in the Underlying Lawsuit.

19. Torres claims that while Fla Upkeep was "providing tree stump grinding services[,]" it breached its duty to "exercise reasonable care in the use and operation of tree stump grinding equipment[.]" Ex. A at ¶¶ 14-16.

20. Fla Upkeep's alleged negligent acts include "failing to properly secure the subject tree stump grinder[,]" "failing to turn off the subject tree stump grinder[,]" "failing to warn Plaintiff of the dangerous condition[,]" "failing to properly train its employees on how to use the subject tree stump grinder[,]" and "otherwise [being] negligent in the use and operation of the landscaping equipment[.]" Ex. A at ¶ 16.

### The Policy

21. Hiscox issued Commercial General Liability Policy No. P100.481.842.3 to Fla Upkeep for the policy period of August 24, 2023 to August 24, 2024 (the "Policy"). The Policy provides certain commercial general liability coverage with Each Occurrence Limits of $1,000,000 and General Aggregate Limits of $2,000,000. **A redacted copy of the Policy is attached hereto at Exhibit B**.

22. The Policy provides coverage for damages that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which the insurance applies. Ex. B at p. 7.

23. The Policy contains a Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14), which modifies the Policy's commercial general liability coverage and provides that the "insurance applies only to 'bodily injury', 'property damage', and/or 'personal and advertising injury', that is caused by or results from the performance of

the specified business operations described in the insured's application for this policy during the policy period. It is further agreed the application for this policy is deemed a part of and attached to this policy." Ex. B at p. 40.

24. **A copy of Fla Upkeep's insurance application summary is attached hereto at Exhibit C.**

25. The insurance application included the following question: "What is your primary type of business?" Fla Upkeep answered "Landscaping/gardening services." Ex. C at p. 2.

26. The insurance application included the following additional question:
Does your business provide any of the following operations, goods, or services?
- Excavation (including any digging/removal of soil below 2 feet)
- Property preservation services
- Tree removal

The response provided was "No." Ex. C at p. 3.

27. The Policy also contains an Exclusion-Designated Ongoing Operations endorsement (Endorsement 15), which provides that the insurance "does not apply to 'bodily injury' arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself of for others." Ex. B at p. 48.

28. The Schedule of Endorsement 15 contains the operation: "Tree removal or tree trimming or pruning from a position of over 12 feet off the ground". Ex. B at p. 48.

29. The Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14) also adds a "Multi-Unit Property" exclusion to the Policy. The Multi-Unit Property exclusion precludes coverage for "bodily injury" "based upon or arising out of operations or 'your work', conducted by you or on your behalf, or work conducted by an unrelated party, involving . . . any 'multi-unit property' or 'tract home project' in which more

5

than ten (10) houses or dwelling units have been built, or are in any stage of development, planning or construction . . . ." Ex. B at p. 45.

30. "Multi-unit property" is defined as "any unit of real property in a multi-use or mixed-use building or property where each unit can be separately owned and titled." "Tract home project" is defined as "a development of five (5) or more individual and freestanding houses which share common or similar design elements, floor plans, blueprints, and/or architectural details, and which are constructed at the same time, or consecutively, on the same parcel, adjacent parcels, or parcels so located within one geographic area as to be considered a single project." Ex. B at p. 46-47.

31. The Policy also contains an Exclusion – Designated Professional Services endorsement (Endorsement 6), which provides that there is no coverage for "'bodily injury' . . . caused by the rendering or failure to render any 'professional services.'" Ex. B at p. 29.

32. "Professional services", as defined by the endorsement, include:

> professional services and related advice customarily provided by an accountant, architect, engineer, attorney, insurance agent/broker, investment or financial advisor, physician, surgeon, dentist, or other healthcare provider, securities broker/dealer, real estate agent/broker, surveyor, or inspector, or any other services identified as "professional services" in the Schedule above.

Ex. B at p. 29.

33. The Schedule of Endorsement 6 identifies the professional services as "Landscaping/gardening services". Ex. B at p. 29.

34. The Court in the Underlying Lawsuit has not and is not expected to rule on the coverage issues detailed herein.

35. There is a real and actual case or controversy between Hiscox and Defendants, and adjudication of this matter would serve a useful purpose. Defendant, Torres, has claimed that there is coverage under the Policy based on the allegations in the Underlying Lawsuit.

6

Hiscox disputes that coverage exists for the Underlying Lawsuit and Underlying Claim under the Policy.

## COUNT I – DECLARATORY RELIEF AGAINST DEFENDANTS
## NO DUTY TO DEFEND UNDER THE POLICY

36. Hiscox incorporates the preceding paragraphs 1 through 35 as though fully restated herein.

37. In accordance with the terms of the Policy, as modified by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14), the "insurance applies only to 'bodily injury' . . . that is caused by or results from the performance of the specified business operations described in the insured's application for this policy during the policy period." Ex. B at p. 40.

38. It is alleged that on the date of loss, Fla Upkeep was "removing tree stumps[,]" and that the tree stump grinder involved in the accident "was being utilized to grind or cut tree stumps." Ex. A at ¶¶ 6, 8.

39. Indisputably, Torres claims that his injuries were caused by Fla Upkeep's tree removal operations.

40. Tree removal operations do not fall within the specified business operations described in the application for the Policy (i.e., "Landscaping/gardening services"). In the application, which is deemed a part of and attached to the Policy, the insured specifically denied that Fla Upkeep's operations or services include tree removal. Ex. B at p. 40; Ex. C at p. 3. Since Torres alleges that his injuries were caused by an operation that Fla Upkeep expressly disclaimed doing on its insurance application (i.e., tree removal),the Underlying Claim does not trigger the Policy's insuring agreement, as modified by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14).

41. The Exclusion in the Designated Ongoing Operations endorsement (Endorsement 15) further precludes coverage for the Underlying Claim.

7

42. Endorsement 15 provides that there is no coverage for "bodily injury" arising out of certain ongoing operations, including "Tree removal or tree trimming or pruning from a position of over 12 feet off the ground." Ex. B at p.

43. It is alleged that on the date of loss, Fla Upkeep was "removing tree stumps" and "attempting to shave and/or trim and/or cut a tree that was in the line where fencing needed to be installed." It is also alleged that the tree stump grinder involved in the accident "was being utilized to grind or cut tree stumps." Ex. A at ¶¶ 6, 8.

44. As Torres claims that his injuries arose out of Fla Upkeep's ongoing tree removal and tree trimming operations, there is no coverage for the Underlying Claim under the Policy in accordance with Endorsement 15.

45. The "Multi-Unit Property" exclusion added to the Policy by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14) also limits or precludes coverage.

46. It is alleged that Fla Upkeep "entered into a business agreement to perform and/or provide services" throughout the Estates of Stirling Lake Homeowners Association. Ex. A at ¶ 7.

47. The "Multi-Unit Property" exclusion precludes coverage for "bodily injury" "based upon or arising out of operations or 'your work', conducted by you or on your behalf, or work conducted by an unrelated party, involving . . . any 'multi-unit property' or 'tract home project' in which more than ten (10) houses or dwelling units have been built, or are in any stage of development, planning or construction . . . ." Ex. B at p. 45.

48. On information and belief, the Estates of Stirling Lake Homeowners Association qualifies as a "multi-unit property" or "tract home project", as those terms are defined in the Policy. As such, there is no coverage for the Underlying Claim under the Policy

8

in accordance with the "Multi-Unit Property" exclusion added to the Policy by Endorsement 14.

49. The Declaration of Covenants for the Estates of Stirling Lake Homeowners Association, Inc. ("Declaration of Covenants") is recorded in Official Records Book 20889, Pages 0201-0238 of Broward County Public Records, and is attached at **Exhibit D**.

50. The Declaration of Covenants reflects that the Estates of Stirling Lake is a planned development consisting of five (5) or more "units," defined as "each platted lot upon the Properties on which a single family, residential dwelling has been or is intended to be constructed by Declarant and conveyed by recorded deed to a purchaser thereof[.]" Ex. D at p. 4.

51. "Properties" is defined as the "real property described in Exhibit A" to the Declarations of Covenants. Ex. D at p. 4. Exhibit A describes the real property as all "lands within the Plat of Estates of Stirling Lake as recorded in Plat Book 142, Page 6, Public Records of Broward County, Florida." Ex. D at p. 21. That Plat Book recording is attached at **Exhibit E**.

52. The Plat Book recording reflects that the Estates of Stirling Lake consists of hundreds of platted lots located on the same parcel of land, adjacent parcels of land, or located within the same geographic area as to be considered a single project. *See* Ex. E.

53. The Declaration of Covenants reflect that the single-family residential dwellings constructed within the Estates of Stirling Lake share common or similar design elements, floor plans, blueprints, and/or architectural details. For example, the Declaration of Covenants provide that "No building . . . or other structure of any kind shall be erected, constructed, placed or maintained on the Properties, nor shall any dwelling or other improvements on each Unit, as originally constructed and provided by [the developer], be altered, changed, repaired or modified unless prior to the commencement of any work thereof,

9

two complete sets for plans and specifications therefore . . . shall have been first submitted in writing for approval and approved in writing by the [Estate of Stirling Lake] Architectural Committee." Ex. D at p. 15-16.

54. The mortgage for the specific property within the Estates of Stirling Lake where Fla Upkeep was allegedly working on the date of the accident[1] (the "Property") is recorded in Official Records Book 48318, Pages 419-432 of Broward County Public Records, and is attached at **Exhibit F**.

55. The mortgage contains a "Planned Unit Development Rider," which states that the Property is "part of a planned unit development known as Estates of Stirling Lake[.]" Ex. F at p. 11.

56. Since the Estates of Stirling Lake Homeowners Association qualifies as a "multi-unit property" or "tract home project", there is no coverage for the Underlying Claim in accordance with the "Multi Unit Property" exclusion added to the Policy by Endorsement 14.

57. The exclusion in the Designated Professional Services endorsement (Endorsement 6) may further limit or preclude coverage.

58. Endorsement 6 provides that there is no coverage for "bodily injury" caused by the rendering or failure to render "professional services". The Schedule of Endorsement 6 amends "professional services" to include "Landscaping/gardening services." Ex. B at p. 29.

59. While Hiscox disputes that the removal of trees or tree stumps qualifies as "Landscaping/gardening services" within the meaning of the Policy, to the extent that Torres' injuries were caused by Fla Upkeep's rendering or failure to render "professional services" as defined, there is no coverage for the Underlying Claim under the Policy in accordance with Endorsement 6.

---

[1] The Underlying Complaint alleges that "On or about October 20, 2023 . . . . Defendant Fla Upkeep was removing tree stumps and/or providing landscaping services at a residential property located at 16421 Ontario Place, Davie, FL 33331." (Ex. A at ¶ 6).

60. Because there is no coverage for the Underlying Claim under the Policy for the reasons set forth above, Hiscox has no duty to defend Fla Upkeep with respect to the Underlying Claim, or to indemnify any sums Fla Upkeep may become legally obligated to pay as damages to Torres.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Hiscox respectfully prays for the following relief:

A. Taking jurisdiction of this matter;

B. A declaration that Hiscox has no duty to defend Fla Upkeep with respect to the Underlying Claim under the Policy;

C. A declaration that the damages sought in the Underlying Claim were not caused by operations described in the insured's application for the Policy, and thus the Underlying Claim does not trigger the Policy's insuring agreement as modified by the Contractors Conditions and Exclusion – Florida endorsement (Endorsement 14);

D. A declaration that coverage for the Underlying Claim under the Policy is precluded by the Exclusion – Designated Ongoing Operations (Endorsement 15);

E. A declaration that coverage for the Underlying Claim under the Policy is precluded by the Multi-Unit Property exclusion within Endorsement 14.

F. A declaration that the Exclusion – Designated Professional Services Endorsement 6 precludes coverage for the Underlying Claim under the Policy; and

E. For such other and further relief as this Court deems just and proper.

**COUNT II – DECLARATORY RELIEF AGAINST DEFENDANTS**
**NO DUTY TO INDEMNIFY UNDER THE POLICY**

61. Hiscox incorporates the preceding paragraphs 1 through 35 as though fully restated herein.

62. In accordance with the terms of the Policy, as modified by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14), the "insurance applies only to 'bodily injury' . . . that is caused by or results from the performance of the specified business operations described in the insured's application for this policy during the policy period." Ex. B at p. 40.

63. It is alleged that on the date of loss, Fla Upkeep was "removing tree stumps[,]" and that the tree stump grinder involved in the accident "was being utilized to grind or cut tree stumps." Ex. A at ¶ ¶ 6, 8.

64. Indisputably, Torres claims that his injuries were caused by Fla Upkeep's tree removal operations.

65. Tree removal operations do not fall within the specified business operations described in the application for the Policy (i.e., "Landscaping/gardening services"). In the application, which is deemed a part of and attached to the Policy, the insured specifically denied that Fla Upkeep's operations or services include tree removal. Ex. B at p. 40; Ex. C at p. 3. Since Torres alleges that his injuries were caused by an operation that Fla Upkeep expressly disclaimed doing on its insurance application (i.e., tree removal),the Underlying Claim does not trigger the Policy's insuring agreement, as modified by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14).

66. The Exclusion in the Designated Ongoing Operations endorsement (Endorsement 15) further precludes coverage for the Underlying Claim.

67. Endorsement 15 provides that there is no coverage for "bodily injury" arising out of certain ongoing operations, including "Tree removal or tree trimming or pruning from a position of over 12 feet off the ground." Ex. B at p.

68. It is alleged that on the date of loss, Fla Upkeep was "removing tree stumps" and "attempting to shave and/or trim and/or cut a tree that was in the line where fencing needed to be installed." It is also alleged that the tree stump grinder involved in the accident "was being utilized to grind or cut tree stumps." Ex. A at ¶¶ 6, 8.

69. As Torres claims that his injuries arose out of Fla Upkeep's ongoing tree removal and tree trimming operations, there is no coverage for the Underlying Claim under the Policy in accordance with Endorsement 15.

70. The "Multi-Unit Property" exclusion added to the Policy by the Contractors Conditions and Exclusions – Florida endorsement (Endorsement 14) also limits or precludes coverage.

71. It is alleged that Fla Upkeep "entered into a business agreement to perform and/or provide services" throughout the Estates of Stirling Lake Homeowners Association. Ex. A at ¶ 7.

72. The "Multi-Unit Property" exclusion precludes coverage for "bodily injury" "based upon or arising out of operations or 'your work', conducted by you or on your behalf, or work conducted by an unrelated party, involving . . . any 'multi-unit property' or 'tract home project' in which more than ten (10) houses or dwelling units have been built, or are in any stage of development, planning or construction . . . ." Ex. B at p. 45.

73. On information and belief, the Estates of Stirling Lake Homeowners Association qualifies as a "multi-unit property" or "tract home project", as those terms are defined in the Policy. As such, there is no coverage for the Underlying Claim under the Policy in accordance with the "Multi-Unit Property" exclusion added to the Policy by Endorsement 14.

74. The Declaration of Covenants for the Estates of Stirling Lake Homeowners Association, Inc. ("Declaration of Covenants") is recorded in Official Records Book 20889, Pages 0201-0238 of Broward County Public Records, and is attached at **Exhibit D**.

75. The Declaration of Covenants reflects that the Estates of Stirling Lake is a planned development consisting of five (5) or more "units," defined as "each platted lot upon the Properties on which a single family, residential dwelling has been or is intended to be constructed by Declarant and conveyed by recorded deed to a purchaser thereof[.]" Ex. D at p. 4.

76. "Properties" is defined as the "real property described in Exhibit A" to the Declarations of Covenants. Ex. D at p. 4. Exhibit A describes the real property as all "lands within the Plat of Estates of Stirling Lake as recorded in Plat Book 142, Page 6, Public Records of Broward County, Florida." Ex. D at p. 21. That Plat Book recording is attached at **Exhibit E**.

77. The Plat Book recording reflects that the Estates of Stirling Lake consists of hundreds of platted lots located on the same parcel of land, adjacent parcels of land, or located within the same geographic area as to be considered a single project. *See* Ex. E.

78. The Declaration of Covenants reflect that the single-family residential dwellings constructed within the Estates of Stirling Lake share common or similar design elements, floor plans, blueprints, and/or architectural details. For example, the Declaration of Covenants provide that "No building . . . or other structure of any kind shall be erected, constructed, placed or maintained on the Properties, nor shall any dwelling or other improvements on each Unit, as originally constructed and provided by   , be altered, changed, repaired or modified unless prior to the commencement of any work thereof, two complete sets for plans and specifications therefore . . . shall have been first submitted in writing for approval

14

and approved in writing by the [Estate of Stirling Lake] Architectural Committee." Ex. D at p. 15-16.

79. The mortgage for the specific property within the Estates of Stirling Lake where Fla Upkeep was allegedly working on the date of the accident[2] (the "Property") is recorded in Official Records Book 48318, Pages 419-432 of Broward County Public Records, and is attached at **Exhibit F**.

80. The mortgage contains a "Planned Unit Development Rider," which states that the Property is "part of a planned unit development known as Estates of Stirling Lake[.]" Ex. F at p. 11.

81. Since the Estates of Stirling Lake Homeowners Association qualifies as a "multi-unit property" or "tract home project", there is no coverage for the Underlying Claim in accordance with the "Multi Unit Property" exclusion added to the Policy by Endorsement 14.

82. The exclusion in the Designated Professional Services endorsement (Endorsement 6) may further limit or preclude coverage.

83. Endorsement 6 provides that there is no coverage for "bodily injury" caused by the rendering or failure to render "professional services". The Schedule of Endorsement 6 amends "professional services" to include "Landscaping/gardening services." Ex. B at p. 29.

84. While Hiscox disputes that the removal of trees or tree stumps qualifies as "Landscaping/gardening services" within the meaning of the Policy, to the extent that Torres' injuries were caused by Fla Upkeep's rendering or failure to render "professional services" as defined, there is no coverage for the Underlying Claim under the Policy in accordance with Endorsement 6.

---

[2] The Underlying Complaint alleges that "On or about October 20, 2023 . . . . Defendant Fla Upkeep was removing tree stumps and/or providing landscaping services at a residential property located at 16421 Ontario Place, Davie, FL 33331." (Ex. A at ¶ 6).

85. Because there is no coverage for the Underlying Claim under the Policy for the reasons set forth above, Hiscox has no duty to defend Fla Upkeep with respect to the Underlying Claim, or to indemnify any sums Fla Upkeep may become legally obligated to pay as damages to Torres.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Hiscox respectfully prays for the following relief:

A. Taking jurisdiction of this matter;

B. A declaration that Hiscox has no duty to indemnify Fla Upkeep for the allegations of the Underlying Claim under the Policy;

C. A declaration that the damages sought in the Underlying Claim were not caused by operations described in the insured's application for the Policy, and thus the Underlying Claim does not trigger the Policy's insuring agreement as modified by the Contractors Conditions and Exclusion – Florida endorsement (Endorsement 14);

D. A declaration that coverage for the Underlying Claim under the Policy is precluded by the Exclusion – Designated Ongoing Operations (Endorsement 15);

E. A declaration that coverage for the Underlying Claim under the Policy is precluded by the Multi-Unit Property exclusion within Endorsement 14.

F. A declaration that the Exclusion – Designated Professional Services Endorsement 6 precludes coverage for the Underlying Claim under the Policy; and

G. For such other and further relief as this Court deems just and proper.

**COUNT III – DECLARATORY RELIEF – RESCISSION**

86. Hiscox incorporates the preceding paragraphs 1 through 35 as though fully restated herein.

87. Fla Upkeep submitted an insurance application to Hiscox in which Fla Upkeep represented that its business operations or services do not include tree removal or excavation work. Ex. C at p. 3.

88. Based upon the allegations of the Underlying Lawsuit, and based upon information and belief, Fla Upkeep's business operations or services include tree removal, contrary to the representations made on the application.

89. Attached as Composite Exhibit G are various social media postings by Fla Upkeep which show that for years Fla Upkeep's operations or services have included tree removal, contrary to the representations made on the application. *See* Composite Ex. G.

90. Fla Upkeep's social media postings also show that for years Fla Upkeep's operations or services have included excavation work, contrary to the representations made on the application. *See* Composite Ex. G; Ex. C at p. 3.

91. Had Fla Upkeep provided truthful answers in the insurance application, Hiscox would not have issued the Policy or at least would have issued the Policy under materially different terms.

92. Hiscox did not have knowledge of the facts materially misrepresented by Fla Upkeep at the time the insurance application was submitted, or at the time that the Policy was issued.

93. By reason of the material misrepresentations made by the Fla Upkeep on the insurance application, the Policy is void *ab initio*.

94. Accordingly, Hiscox is entitled to rescind the Policy.

95. Moreover, as a result of the Policy being rescinded, Hiscox is also entitled to recoup all amounts incurred, paid or expended in connection with the Underlying Claim. This

includes, but is not limited to, all amounts incurred, paid or expended by Hiscox to defend Fla Upkeep in the Underlying Lawsuit under a reservation of rights.

96. Upon recission of the Policy, Hiscox will return to Fla Upkeep all premiums paid for the Policy.

WHEREFORE, pursuant to 28 U.S.C. §§ 2201 and 2202, Hiscox respectfully prays for the following relief:

A. Taking jurisdiction of this matter;

B. Declaring that Hiscox is entitled to rescind the Policy.

## DEMAND FOR JURY TRIAL

Hiscox respectfully demands a trial by jury on all claims and defenses so triable.

DATED this 7th day of June, 2024.

        Respectfully submitted,

        **KENNEDYS CMK, LLP**
        100 SE Third Avenue
        Suite 806
        Fort Lauderdale, FL  33394
        Tel.: (305) 371-1111

        By: */s/ Kristen D. Perkins*
            KRISTEN D. PERKINS
            Florida Bar No.: 611816
            NICOLE M. CASTANO
            Florida Bar No.: 104934
            Kristen.Perkins@KennedysLaw.com
            Nicole.Castano@KennedysLaw.com
            KDPservice@KennedysLaw.com